THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JESSE PRICE, Defendant-Appellant.

Fourth District   No. 4—92—0921

Opinion filed July 30, 1993.

James A. Martinkus, of Erwin, Martinkus, Cole & Ansel, Ltd., of Champaign, for appellant.

Thomas J. Difanis, State's Attorney, of Urbana (Norbert J. Goetten, Robert J. Biderman, and James Majors, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE COOK delivered the opinion of the court:

Defendant Jesse Price pleaded guilty to driving under the influence of alcohol (DUI) and the trial court sentenced him to 12 months of conditional discharge. Defendant appeals, contending the trial court erred in refusing to grant him supervision. We affirm.

On May 22, 1992, at 9:34 p.m., defendant was arrested and charged with DUI in violation of section 11—501(a)(2) of the Illinois Vehicle Code (Ill. Rev. Stat. 1991, ch. 95½, par. 11—501(a)(2)). At the time of his arrest defendant submitted to a test which showed he had a blood-alcohol concentration (BAC) of .25. Defendant pleaded guilty to the DUI charge. The court issued a temporary judicial driving permit to defendant.

At sentencing the court considered the presentence summary report and the attached "alcohol and drug evaluation uniform report." The presentence report showed no accident occurred as a result of the offense and defendant had been properly insured. Defendant had no criminal record and no traffic record until this arrest for DUI. The attached alcohol and drug evaluation indicated defendant admitted "consuming 8-9 beers in 6 hrs[.]" but the report noted that such consumption "is not consistent with a BAC of .25." Defendant stated in the report he had not consumed any alcohol since his arrest for DUI. Defendant's evaluation was "Level II—Problematic Use (Moderate Risk)." (See 92 Ill. Adm. Code §1001.410 (1992).) The State presented no evidence in aggravation. In mitigation defendant testified he had

learned from this incident about the effects of drinking alcohol and the dangers of driving under the influence of alcohol. Defendant admitted he had been completely at fault and that he had since changed his behavior by pledging never again to drive under the influence of alcohol. Defendant stated he "underestimated" the amount of alcohol he drank on May 22, and upon questioning by the court admitted that it "could very well have been" 20 to 25 drinks. Defendant presented evidence showing he had participated in, and helped organize, several significant community service projects over the past few years.

At sentencing the court commented that the evidence presented showed defendant was "a very good person" who was not likely to commit further offenses. The court then addressed the circumstances surrounding the incident:

"And the real troubling aspect of this whole thing is the blood[-]alcohol concentration. The incident itself, which of course has to be considered at .25, it is just amazing at how much you had to drink, being a person as big as you are because of all the alcohol that it takes to affect you that way. It's also, as you probably learned, .25 a lot of people would be passed out well before then. Most people would not be awake to find the car to get in it to operate it. But at the .25, you were able to get in the car and operate it, which shows a substantial tolerance towards alcohol. And my debate in my mind has been and is still today is because I have never granted court supervision to anyone who blew a .25. The highest I ever granted court supervision was to someone who was at a .22, and that is very rare. I don't have a [strict] cutoff because I understand that this can happen to a lot of different people because of bad decision making, especially when I see your results from your education to show how [naive] you were about alcohol and its effects to begin with; and this is the real problem that I have. Because when someone is operating at a .25, I can't believe that the public would be saying that person should get leniency. It is just such a high blood[-]alcohol concentration to be out on the road with.

*** I don't believe that the public would think that a person with a .25 should get leniency. That's one of the standards that I have to meet."

The court sentenced defendant to 12 months of conditional discharge, the conditions including a fine of $250, 100 hours of public service work, and counseling. The court subsequently denied defendant's mo-

tions to withdraw guilty plea and for new trial, or in the alternative for reconsideration and reduction of sentence.

■ Defendant suggests there is some confusion in the State's charging documents as he was arrested about 9 p.m., but the traffic complaint indicates he was arrested at 11:34 p.m. Actually the traffic complaint indicates defendant was arrested at "2134," which is 9:34 p.m. Defendant also includes a quotation from a publication entitled "Defending Drinking Drivers." The matters contained in the quotation should have been introduced by way of testimony and are not properly before us. The quotation indicates that urine specimens may not accurately measure impairment, because impairment depends on the level of alcohol in the blood and brain. However, a breathalyzer test, such as employed in this case, does not measure levels in the digestive system. It measures alcohol levels in breath exhaled from the lungs; that alcohol reached the lungs via the blood stream. Defendant had a *"blood*-alcohol concentration" level of .25, and his argument based on the quotation is frivolous.

■ Defendant contends the trial court erred in failing to order supervision. The trial court's sentencing decision is a matter of judicial discretion which will not be altered upon review absent an abuse of that discretion. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882, 884.) Supervision is not a right of any defendant, but a sentencing alternative to be employed in the discretion of the court. Here, the court did not abuse its discretion given the record as a whole. The factors which defendant must meet in order to be eligible for court supervision are listed in sections 5—6—1(c) and (d) of the Unified Code of Corrections (Code) (Ill. Rev. Stat. 1991, ch. 38, pars. 1005—6—1(c), (d)). We reject defendant's argument that the trial court improperly used his high blood-alcohol level as an additional statutory prohibition against court supervision. It is not error for a trial court to sparingly grant court supervision when a defendant has a very high blood-alcohol level, even where the defendant seems to have otherwise been an exemplary citizen. The record does not support defendant's argument the trial court was inflexible, or refused to exercise its discretion in cases involving a high BAC. The court specifically stated there was not a maximum BAC level for allowing court supervision, but to allow supervision with such a high blood-alcohol level would be a rare instance.

The evidence showed that in the past defendant participated in several significant community service projects. However, that does not change the fact that defendant endangered himself and those around him when he "underestimated" how much he had to drink on

May 22 and decided to drive while under the influence of perhaps 20 to 25 glasses of beer. Given the record as a whole, the trial court's sentencing decision was not error since the court could have easily concluded, in accordance with the Code, that it would not be in the best interest of justice to order court supervision, or that the best interests of the public would not be served by defendant receiving court supervision. (See Ill. Rev. Stat. 1991, ch. 38, pars. 1005—6—1(c), (d).) Accordingly, the decision of the circuit court of Champaign County is affirmed.

Affirmed.

KNECHT and LUND, JJ., concur.